Appeal No. 23-1450

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

AXIS SURPLUS INSURANCE COMPANY,
Plaintiff-Appellee

v.

TRISTAR COMPANIES, LLC
Defendant-Appellant.

Appeal from the United States District Court for the Eastern District of Missouri
The Honorable Audrey G. Fleissig

RESPONSE BRIEF OF PLAINTIFF-APPELLEE
AXIS SURPLUS INSURANCE COMPANY

**SKARZYNSKI MARICK & BLACK LLP**

By: */s/ Michael M. Marick*
Michael M. Marick
Andrew J. Candela
353 N. Clark Street, Suite 3650
Chicago, IL 60654
(312) 946-4200
mmarick@skarzynski.com
acandela@skarzynski.com

*Attorneys for Plaintiff-Appellee,
AXIS Surplus Insurance Company*

**WATTERS WOLF BUB HANSMANN**

By: */s/ Russell F. Watters*
Russell F. Watters
600 Kellwood Parkway, Suite #120
St. Louis, MO 63017
(636) 798-0570
rwatters@wwbhlaw.com

*Attorneys for Plaintiff-Appellee,
AXIS Surplus Insurance Company*

# SUMMARY OF THE CASE

On December 10, 2021, a tornado destroyed an Amazon Inc. warehouse in Edwardsville, Illinois, resulting in several deaths and injuries to multiple individuals. TriStar Properties LLC ("TriStar"), the developer for the warehouse, provided notice to AXIS Surplus Insurance Company ("AXIS") under a liability policy purchased by another named insured. In response, AXIS filed a declaratory judgment action seeking a declaration that it had neither a duty to defend nor indemnify TriStar for the pending and future personal injury and wrongful death lawsuits and claims (the "Warehouse Claims") because the warehouse was not a location insured by the AXIS Policy and for multiple additional reasons. This case does not involve other liability policies under which TriStar may be insured and entitled to coverage.

AXIS and TriStar filed Cross-Motions for Summary Judgment on the duty to defend and indemnify. On February 10, 2023, the district court granted summary judgment in favor of AXIS. The district court held: (1) TriStar did not meet its burden of demonstrating coverage because it was undisputed that TriStar did not own, rent, or occupy the warehouse within the meaning of the AXIS Policy; (2) the warehouse was not listed on the policy's Schedule of Locations; and (3) the Products-Completed Operations Hazard Exclusion precluded coverage.

If the Court grants oral argument, AXIS requests an amount equal to the total time allocated to TriStar.

# **RULE 26.1 DISCLOSURE STATEMENT**

Under Federal Rule of Appellate Procedure 26.1, Appellee, AXIS Surplus Insurance Company, discloses the following corporate interests:

AXIS Surplus Insurance Company is a wholly-owned subsidiary of AXIS Insurance Company, which is a wholly-owned subsidiary of AXIS Specialty U.S. Holdings, Inc., a holding company organized under Delaware law. AXIS Specialty U.S. Holdings, Inc. is a wholly-owned subsidiary of AXIS Specialty Global Holdings Limited, a holding company organized under the law of Ireland, which in turn is wholly-owned subsidiary of AXIS Capital Holdings Limited ("AXIS Capital"), a holding company organized under the laws of Bermuda. AXIS Capital is publicly traded on the New York Stock Exchange under stock symbol AXS. T. Rowe Price Associates, Inc. owns ten percent (10%) or more of AXIS Capital stock.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................. ii

RULE 26.1 DISCLOSURE STATEMENT ........................................... iii

TABLE OF CONTENTS ................................................................... iv

TABLE OF AUTHORITIES ............................................................. vi

STATEMENT OF THE CASE ............................................................ 1

I.      THE DEVELOPMENT OF THE AMAZON WAREHOUSE. ...................... 1

II.      THE AXIS POLICY. ................................................................. 2

III.      THE UNDERLYING WAREHOUSE CLAIMS. .................................. 6

IV.      PROCEEDINGS BEFORE THE DISTRICT COURT. ...................... 8

SUMMARY OF THE ARGUMENT ................................................... 10

ARGUMENT ............................................................................... 12

     A.      TriStar bears the burden of establishing the warehouse claims are even potentially covered. ................................................ 13

     B.      TriStar has not met its burdens of proof on summary judgment. ......................................................... 14

         1.      The AXIS Policy limits coverage to premises owned, rented or occupied by a named insured, which does not include the Amazon Warehouse. ........................................ 15

         2.      The Amazon Warehouse is not listed within the schedule of locations or by endorsement. ................................. 19

         3.      The Warehouse Claims are excluded by the Products-Completed Operations Hazard Exclusion. ............................... 22

     C.      Both the Classification and Professional Services Exclusions preclude coverage for the Warehouse Claims. ................. 26

1. AXIS has not waived the applicability of the Classification and Professional Services Exclusions ................ 26

2. The Classification Exclusion limits coverage of Location No. 17 to operations related to vacant land. .............. 28

3. The Professional Services Exclusion precludes claims for TriStar's negligence in building, constructing, and developing the Amazon Warehouse. ....................................... 30

CONCLUSION ................................................................................................. 311

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Cont'l W. Ins. Co.*,
  436 S.W.3d 548 (Mo. banc 2014)..................................................... 13

*Am. Econ. Inc. Co. v. Jackson*,
  476 F.3d 620 (8th Cir. 2007) .......................................................... 30

*Blair By Snider v. Perry Cnty. Mut. Ins. Co.*,
  118 S.W.3d 605 (Mo. banc 2003)..................................................... 25

*Brazil v. Auto Owners Ins. Co.*,
  3 F.4th 1040 (8th Cir. 2021) ........................................................... 16

*Cap. Indem. Corp. v. 1405 Assoc., Inc.*,
  340 F.3d 547 (8th Cir. 2003) .......................................................... 23

*Cedar Hill Hardware and Const. Supply, Inc. v. Ins. Corp. of Hannover*,
  563 F.3d 329 (8th Cir. 2009) ......................................................27, 28

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................ 14

*Cnty. of Scotland v. Mo. Pub. Entity Mgmt., Fund*,
  537 S.W.3d 358 (Mo. Ct. App. 2017) ............................................. 13

*Dibben v. Shelter Ins. Co.*,
  261 S.W.3d 553 (Mo. Ct. App. 2008) .........................................16, 18

*Gavan v. Bituminous Cas. Corp.*,
  242 S.W.3d 718 (Mo. banc 2008)..................................................... 28

*Hartford Underwriter's Ins. Co. v. Est. of Turks*,
  206 F. Supp. 2d 968 (E.D. Mo. 2002) ............................................. 14

*Hill v. City of Pine Bluff, Ark.*,
  696 F.3d 709 (8th Cir. 2022) .......................................................... 20

*Hodge v. Walgreen Co.*,
  37 F.4th 461 (8th Cir. 2022) ........................................................... 14

*Jeseritz v. Potter*,
   282 F.3d 545 (8th Cir. 2002) ............................................................. 24

*Jordan v. NUCOR Corp.*,
   295 F.3d 828 (8th Cir. 2002) ............................................................. 12

*Mo. Emp'r Mut. Ins. Co. v. Nichols*,
   149 S.W.3d 617 (Mo. Ct. App. 2004) ......................................... 18, 27

*Naeger v. Farmers Ins. Co.*,
   436 S.W.3d 654 (Mo. Ct. App. 2014) ............................................... 16

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Structural Sys. Tech., Inc.*,
   756 F. Supp. 1232 (E.D. Mo. 1991) ................................................. 30

*Nooter Corp. v. Allianz Underwriters Ins. Co.*,
   536 S.W.3d 251 (Mo. Ct. App. 2017) ............................................... 22

*Owners Ins. Co. v. Craig*,
   514 S.W.3d 614 (Mo. banc 2017) ................................................ 18, 22

*Patel v. LM General Ins. Co.*,
   922 F.3d 875 (8th Cir. 2019) ............................................................. 24

*Piatt v. Ind. Lumbermen's Mut. Ins. Co.*,
   461 S.W.3d 788 (Mo. banc. 2015) .................................................... 13

*PlaNet Prods. v. Shank*,
   119 F.3d 729 (8th Cir. 1997) ............................................................. 29

*Ringstreet Northcrest, Inc. v. Bisanz*,
   890 S.W.2d 713 (Mo. Ct. App. 1995) ............................................... 16

*Schmidt v. Util. Ins. Co.*,
   182 S.W.2d 181 (Mo. 1944) ............................................................... 23

*State Farm Fire & Cas. Co. v. D.T.S.*,
   867 S.W.2d 642 (Mo. Ct. App. 1993) ............................................... 13

*Trans World Airlines, Inc. v. Associated Aviation Underwriters*,
   58 S.W.3d 609 (Mo. Ct. App. 2001) ............................................ 14, 22

*Travelers Indem. Co. v. Figg Bridge Eng'rs, Inc.*,
   389 F. Supp. 3d 1060 (S.D. Fla. June 24, 2019) .............................. 31

*United States v. Bailey*,
    571 F.3d 791 (8th Cir. 2009) .............................................................. 20

*Walden v. Smith*,
    427 S.W.3d 269 (Mo. Ct. App. 2014) ........................................23, 24

*Ward v. International Indemnity*,
    897 S.W.2d 627 (Mo. Ct. App. 1995) .............................................. 24

*Warner Bros. Ent., Inc. v. X One, X Prod.*,
    644 F.3d 584 (8th Cir. 2011) .............................................................. 26

*Watson v. O'Neill*,
    365 F.3d 609 (8th Cir. 2004) .............................................................. 24

*Wittenburg v. Am. Ex. Fin. Advisors, Inc.*,
    464 F.3d 831 (8th Cir. 2006) .............................................................. 20

## **Rules**

Eighth Circuit Rule 28A(j)....................................................................... 26

Fed. R. App. P. 28(a)(9)(A) ............................................................17, 21

<u>**STATEMENT OF THE CASE**</u>

**I.**     <u>**The Development of the Amazon Warehouse.**</u>

In September 2017, TriStar entered into a Development Management Agreement with Gateway East 9B, LLC, the owner of the land on which the Amazon Warehouse would be built. App. 1224.[1] As "manager," TriStar was responsible for cooperating and coordinating with architects, contractors, and sales and marketing personnel as well as any other entity in connection with the financing, development, design, construction, or operation of the Amazon Warehouse. App. 1225. Property records for Madison County, Illinois show that by October 2017, the address of the property on which the Amazon Warehouse would be built was 3077 Gateway Commerce Center Drive, Edwardsville, Illinois. App. 800-01 R. Doc. 52 at 18-19.

Amazon took possession of the Amazon Warehouse on or about June 30, 2020. App. 802 R. Doc. 52 at 20. TriStar received its last payment related to its development of the warehouse on November 23, 2020. App. 803-04 R. Doc. 52 at 21-22. Over a year later, on December 10, 2021, a tornado struck and destroyed the warehouse, resulting in six fatalities and an unknown number of injuries. App. 794

---

[1] Joint Appendix Volume III (App. 934 – 1235) contains documents accepted by the district court below but are not available on the electronic court docket for the Eastern District of Missouri.

R. Doc. 52 at 12. At the time of the warehouse collapse, TriStar did not own or rent the warehouse; Amazon Inc. occupied it. App. 803-04 R. Doc. 52 at 21-22.[2]

## II.    The AXIS Policy.

AXIS issued a Commercial General Liability Policy No. ESC90071 (the "AXIS Policy") to Financial Processing Services LLC, for the policy period of June 1, 2021 to June 1, 2022. App. 43 R. Doc. 1-2 at 6; App. 45 R. Doc. 1-2 at 8. Subject to all other terms, limitations, and exclusions, the AXIS Policy's limits of liability are $1 million each occurrence and $2 million in aggregate. *Id.* A total premium of $1,905 was paid for the AXIS Policy. *Id.* TriStar (identified as TriStar Property Associates LLC) was added to the AXIS Policy as a named insured by endorsement along with twenty other entities. App. 69 R. Doc. 1-2 at 32.

The AXIS Policy's Commercial General Liability Form (CG 00 01), Coverage A, provides that AXIS "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'… *to which this insurance applies*." App. 54 R. Doc. 1-2 at 15 (emphasis added).

---

[2] Upon information and belief, TriStar purchased policies of general liability insurance which may afford coverage for the Warehouse Claims, but those policies are not at issue in this appeal.

The AXIS Policy's Limitation of Coverage To Designated Premises Project

or Operation Endorsement ("Limitation of Coverage Endorsement") further defines

the scope of Coverage A.[3] The endorsement states:

> **Premises:**
> Refer to Form SI112 for **All** locations
>
> **Project:**
> Information required to complete this Schedule, if not shown, will be shown in the Declarations.

App. 100 R. Doc. 1-2 at 63. The endorsement further provides:

> b. This insurance applies to "bodily injury" or "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:
>
> (1) The "bodily injury" or "property damage":
>
> > (a) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
> >
> > (b) Arises out of the project or operation shown in the Schedule;

*Id.*

The AXIS Policy's Schedule of Locations Endorsement, Form SI112,

provides:

## SCHEDULE OF LOCATIONS

This endorsement modifies insurance provided under the following:

---

[3] The Endorsement modifies Commercial General Liability Coverage Form CG 00 01. App. 100 R. Doc. 1-2 at 63.

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

The policy Declarations page is amended as respects Location of all premises you own, rent, or occupy to include the following:

\*     \*     \*

16. Hwy 270/255 & Hwy 111, Madison, IL 62060

\*     \*     \*

(App. 70 R. Doc. 1-2 at 33).[4]

On June 25, 2021, roughly one month after the AXIS Policy incepted, Financial Processing requested that a new location be added to the policy, which it described as "E-1255, W. SAND RD., N. 1-270, S. Hwy 270-255 + Hwy 111 EDWARDSVILLE IL 62025." App. 758 R. Doc. 43-8 at 2. For a premium of $33, Policy Change Number 1 classified Location No. 17 as "49451 – Vacant Land – Other than Not-For Profit." App. 117 R. Doc. 1-2 at 80. Policy Change Order Number 1 also added Gateway 210 Owner, LLC as a named insured. *Id.*

The AXIS Policy is subject to exclusions that further narrow coverage. First, the AXIS Policy contains a Products-Completed Operations Hazard Exclusion:

---

[4] The Schedule of Locations and additional endorsements list a number of properties, but TriStar only raised arguments in the district court as concerning Location No. 16 and Location No. 17 (added by endorsement after the policy already had been in effect). As discussed in Section B.2 of the Argument, TriStar has abandoned its reliance on Location No. 16 and points solely to Location No. 17 in its brief before this Court.

"This insurance does not apply to 'bodily injury'… included within the 'products-completed operations hazard.'" App. 95 R. Doc. 1-2 at 58. The AXIS Policy defines the "products-completed operations hazard:"

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

\* \* \*

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

\* \* \*

b. Does not include "bodily injury" or "property damage" arising out of:

(a) The transportation of property….

\* \* \*

(App. 66 R. Doc. 1-2 at 29).

Second, the Policy's Classification Limitation Endorsement precludes coverage for "'bodily injury'… arising of any operations that are not classified or shown on the Declarations of this Policy." App. 115 R. Doc. 1-2 at 78. The same exclusion also provides that "this insurance applies only to 'bodily injury'…arising out of operations classified or shown on the Declarations." *Id*.

Third, the Designated Professional Services Exclusion applies to Coverage A "with respect to any professional services shown in the Schedule." App. 97 R. Doc. 1-2 at 60. The Schedule states: "All Professional Services provided by the Insured." *Id*. The Professional Services Exclusion precludes coverage for "'bodily injury'… due to the rendering of or failure to render any professional service." *Id*. The exclusion further states that it applies:

> [E]ven if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" … involved the rendering of or failure to render any professional service. *Id.*

### III.   <u>The Underlying Warehouse Claims.</u>

TriStar first provided notice of a claim related to the destruction of the Amazon Warehouse, the *McEwen* Complaint, by email on January 25, 2022. App. 795 R. Doc. 52 at 13. The *McEwen* Complaint alleges TriStar and its agents "participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work" at the warehouse. *Id.* It further alleges that TriStar failed to

include specific architectural features or comply with local, state, and federal building codes in the development of the warehouse. App. 795-96 R. Doc. 52 at 13-14. It seeks unspecified damages as a result of the personal injuries and wrongful death of Austin McEwen. App. 36 R. Doc. 1-1 at 17.

TriStar subsequently provided notice of two additional lawsuits, the *January* Complaint and the *Hickman* Complaint. App. 794 R. Doc. 52 at 12. The *January* Complaint alleges TriStar was under contract to "build, develop and/or construct" the Amazon Warehouse. App. 796 R. Doc. 52 at 14. It alleges the same negligent acts and omissions as the *McEwen* Complaint. *Id.* The *Hickman* Complaint alleges TriStar functioned as the "developer…to build, develop, or construct" the Amazon Warehouse as well as the same negligent acts or omissions as the *McEwen* and *January* Complaints. App. 797 R. Doc. 52 at 15. TriStar also received notice of the wrongful death claims of Clayton Cope and Larry Virden (the "Cope/Virden Claim"), which arise from the collapse of the warehouse. *Id.*

AXIS's Motion for Summary Judgment and the district court's Order and Judgment refer collectively to "Warehouse Claims" as not only the *McEwen, Hickman*, *January* complaints, and the Cope/Virden Claim, but all pending, threatened and future lawsuits involving the tornado which struck the Amazon Warehouse on December 10, 2021. App. 614 R. Doc. 38 at 1; App. 903 R. Doc. 65 at 1.

**IV.    Proceedings before the District Court.**

On March 21, 2022, AXIS filed this declaratory judgment action seeking a declaration it had no duty to defend or indemnify TriStar for the Warehouse Claims. App. 10 R. Doc. 1 at 1. After AXIS filed an Amended Complaint, TriStar filed its Answer and Amended Counterclaim, neither of which identified a scheduled location under the AXIS Policy that included the Amazon Warehouse. App. 423 R. Doc. 25 at 1. Later, in its written discovery responses, TriStar identified Location No. 16 on the Schedule of Locations and Location No. 17, attached via Policy Change Order 1, in support of its contention that the locations included the Amazon Warehouse. App. 804-05 R. Doc. 52 at 22-23.

In moving for summary judgment, AXIS asserted that TriStar could not meet its burden of establishing even the potential for coverage because TriStar did not own, rent or occupy the Amazon Warehouse at either the inception of the policy or at the time of the collapse. App. 627-30 R. Doc. 39 at 9-12. AXIS further argued TriStar could not show the warehouse was a scheduled location (*id.*), and even if it was, the Products-Completed Operations Hazard, the Classification, and Professional Services exclusions precluded coverage. App. 630-636 R. Doc. 39 at 12-18. TriStar argued the claims were within coverage because the Amazon Warehouse fell "squarely in the middle of the generally-described roads and highways in the Schedule" (referencing Location No. 16 and Location No. 17). App.

597-98 R. Doc. 36 at 8-9. TriStar further argued no exclusion applies. App. 598-600 R. Doc. 36 at 9-11.

On February 10, 2023, the district court entered judgment in favor of AXIS, finding it had neither a duty to defend nor to indemnify TriStar for any bodily injury claims stemming from the collapse of the Amazon Warehouse because TriStar could not demonstrate the potential for coverage. App. 924 R. Doc. 66 at 1. The district court found that "the Limitation of Coverage Endorsement specifically refers to the Schedule of Locations when referring to 'premises.' The Schedule of Locations qualifies the premises as those owned, rented, or occupied by a named insured." App. 917 R. Doc. 65 at 15. The district court noted that TriStar did not dispute it did not own, rent or occupy the Amazon Warehouse "at any point during the policy period." App. 917 R. Doc. 65 at 15. Thus, "it is not included in the Schedule of Locations, and thus there is no coverage under the Policy." *Id.*

The district court also rejected TriStar's argument that Location No. 16 or Location No. 17 included the Amazon Warehouse. Location No. 16 was not in Edwardsville. App. 918 R. Doc. 65 at 16. While the description of Location No. 17 did not set forth definitive boundaries, the policy change order classified the location as "vacant land." *Id.* The warehouse "was occupied, developed land, with a definitive street address, as of the inception of the Policy." *Id.* The district court concluded it was "unreasonable to construe the Amazon Warehouse as being

contained within vacant land." *Id.* The warehouse was "neither explicitly nor implicitly contained within the Schedule of Locations." App. 919 R. Doc. 65 at 17.

The district court further found even if the Limitation of Premises Endorsement did not eliminate coverage, the Products-Completed Operations Hazard Exclusion excludes coverage for the Warehouse Claims. App. 922 R. Doc. 65 at 20. TriStar did not dispute it did not own or rent the Amazon Warehouse and that it had completed its work by November 2020. App. 920 R. Doc. 65 at 18. The district court concluded that TriStar's claim that the "transportation of property" exception applied is not supported by the record. App. 921 R. Doc. 65 at 19. The Warehouse Claims allege injuries and wrongful death arising out of a tornado striking the warehouse and alleged faulty design and construction, not the "transportation of property." App. 921-22 R. Doc. 65 at 19-20. Because the exception to the Products-Completed Operations Hazard definition did not apply, the exclusion precluded coverage. App. 922 R. Doc. 65 at 21. TriStar appeals the district court's order granting summary judgment in favor of AXIS on the above bases.

## SUMMARY OF THE ARGUMENT

The district court did not err in granting summary judgment in favor of AXIS for five independent reasons. The district court entered judgment on the first three,

but there are two additional reasons which similarly support and warrant summary judgment.

First, the AXIS Policy provides premises coverage to only those listed properties that TriStar "owned, rented or occupied" and there is no dispute that TriStar never had any such interest in the Amazon Warehouse, either at the time the AXIS Policy incepted or when the warehouse collapsed. Second, the AXIS Policy limits coverage to those properties specifically listed in the Schedule of Locations, and TriStar has not and cannot point to any evidence in the record demonstrating the warehouse is a scheduled location. Third, the claims fall within the Products-Completed Operations Hazard Exclusion because the claims occurred away from premises TriStar owned or rented and after TriStar's work had been completed. The district court correctly found nothing in the record supporting TriStar's claim that the "transportation of property" exception to the exclusion applies.

Fourth, if TriStar was correct that Scheduled Location No. 17 contains the Amazon Warehouse, it is classified as vacant land under the AXIS Policy. The policy's Classification Exclusion precludes coverage for unclassified operations and the policy thus does not provide coverage because the warehouse was commercially developed and occupied. Fifth, the underlying complaints against TriStar allege negligence in TriStar's rendering or failure to render professional services in the

development and construction of the warehouse, which are precluded by the Designated Professional Services Exclusion.

Each of the five grounds is a separate basis to affirm the district court's summary judgment in favor of AXIS.

## ARGUMENT

The district court did not err in granting summary judgment in favor of AXIS, and this Court should affirm the order entered on February 10, 2023. This Court engages in a *de novo* review of the district court's grant of summary judgment. *Jordan v. NUCOR Corp.*, 295 F.3d 828, 834 (8th Cir. 2002). "After reviewing the record in the light most favorable to the nonmoving party, the Court will affirm the decision if there are no genuine issues of material fact." *Id.* (citation omitted).

Here the district court's order should be affirmed for the following reasons: (1) TriStar did not prove it "owned, rented, or occupied" the Amazon Warehouse during the relevant time; (2) it did not prove that the warehouse is listed on the AXIS Policy's Schedule of Locations; (3) it did not prove the claims arise from the "transportation of property," and therefore the claims are not within the exception to the Products-Completed Operations Hazard Exclusion; (4) there is no dispute that the Warehouse Claims do not arise out of the use of vacant land and are excluded by the Classification Exclusion; and (5) the claims allege TriStar negligently performed

professional services and are therefore excluded by the Designated Professional Services Exclusion.

**A.    TriStar bears the burden of establishing the warehouse claims are even potentially covered.**

TriStar has both substantive and procedural burdens of proof with respect to AXIS's Motion for Summary Judgment, which it has failed to meet. "The parties seeking to establish coverage under the insurance policy have the burden of proving that the claim is within the coverage afforded by the policy…even though [the insured is] denominated as defendant[ ] in a declaratory judgment action." *State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642, 644 (Mo. Ct. App. 1993).[5] "An insurer's duty to defend arises only from potential coverage based on facts: 1) alleged in the petition; 2) the insurer knows at the outset of the case; or 3) that are reasonably apparent to the insurer at the outset of the case." *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 553 (Mo. banc 2014) (citation omitted). If those facts do not support the potential for coverage, then the insurer has no duty to defend. *Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. banc. 2015). The insurer bears the burden of proving the applicability of an exclusion to coverage. *Cnty. of Scotland v. Mo. Pub. Entity Mgmt. Fund*, 537 S.W.3d 358, 363–64 (Mo. Ct. App. 2017). However, where an exclusion applies, it is the insured's burden to prove an

---

[5] Neither party disputed that Missouri substantive law applies to the interpretation of the AXIS Policy.

exception brings a claim back within coverage. *Hartford Underwriter's Ins. Co. v. Est. of Turks*, 206 F. Supp. 2d 968, 978 (E.D. Mo. 2002) (citing *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 621–22 (Mo. Ct. App. 2001)).

Though AXIS moved for summary judgment, TriStar bears the burden of proof to show there is a question of fact on whether the Warehouse Claims are at least potentially within the scope of the AXIS Policy's coverage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (summary judgment is properly granted against a nonmoving party where it "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."). AXIS, as the moving party, satisfied its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *Hodge v. Walgreen Co.*, 37 F.4th 461, 464–65 (8th Cir. 2022) (affirming summary judgment where the movant demonstrated the absence of evidence supporting nonmovant's case).

## B. <u>TriStar has not met its burdens of proof on summary judgment.</u>

There is no dispute TriStar never owned, rented or occupied the Amazon Warehouse at any point in time, and there is no evidence in the record demonstrating the Amazon Warehouse is a scheduled location. TriStar points to no competent,

admissible evidence in the record supporting its argument that Location No. 17 contains the warehouse.

Even if TriStar could demonstrate the warehouse is at a scheduled location, three exclusions would preclude coverage for the claims. TriStar concedes the Products-Completed Operations Hazard Exclusion applies, but the record does not support, as the district court correctly found, TriStar's argument that the claims arise out of the "transportation of property." Furthermore, there is no dispute that the claims do not arise out of the property's use as vacant land and are therefore precluded by the Classification Endorsement. Finally, the underlying claims are excluded by the Designated Professional Services Endorsement because they all allege bodily injury due to TriStar's failure to render services in the development of the warehouse.

### 1. The AXIS Policy limits coverage to premises owned, rented or occupied by a named insured, which does not include the Amazon Warehouse.

The Limitation of Coverage Endorsement restricts coverage under the AXIS Policy to "bodily injury" occurring "on the premises shown in the Schedule or the grounds and structures appurtenant to those premises." App. 100 R. Doc. 1-2 at 63. The Schedule of Locations, which the endorsement incorporates, qualifies the location list "as respects Locations of all premises you own, rent or occupy." App. 70 R. Doc. 1-2 at 33. TriStar conceded it did not own the Amazon Warehouse

location at the time of the AXIS Policy's inception or on December 10, 2021 when the warehouse collapsed. App. 803 R. Doc. 52 at 21.

In the face of the undisputed fact that TriStar did not own, rent or occupy the Amazon Warehouse, TriStar asks this Court to ignore Missouri case law and render policy language superfluous. Br. at 17. Under established Missouri law, a court should endeavor to "attribute a reasonable meaning to all provisions" of an insurance policy. *Brazil v. Auto Owners Ins. Co.*, 3 F.4th 1040, 1042 (8th Cir. 2021) (quoting *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713, 718 (Mo. Ct. App. 1995)). A court "must endeavor to give each provision a reasonable meaning to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). Moreover, the "mere existence of limitations and exclusions to broad coverage provisions does not, in and of itself, create ambiguity in the contract." *Naeger v. Farmers Ins. Co.*, 436 S.W.3d 654, 660 (Mo. Ct. App. 2014).

The AXIS Policy is modified by the Limitation of Coverage Endorsement, which states the policy applies to "bodily injury… only if (1) the 'bodily injury…(a) [o]ccurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or (b) [a]rises out of the project or operation shown in the Schedule." App. 100 R. Doc. 1-2 at 63. For the Schedule of Locations "[r]efer to Form SI112 for All locations." *Id*. Accordingly, coverage in the AXIS Policy is

expressly limited to "bodily injury" that occurs or arises out of the premises or projects specifically identified in the policy's Schedule of Locations, Form SI112. *Id.*

The Schedule of Locations begins, "[t]he policy Declarations page is amended as respects Location of all premises you own, rent, or occupy to include the following…." App. 70 R. Doc. 1-2 at 33. This mirrors the table on the Declarations Page which provides:

| ALL PREMISES YOU OWN RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| Per schedule of locations on file with the carrier | |

App. 70 R. Doc. 1-2 at 9. TriStar does not dispute that on June 1, 2021, the date of the AXIS Policy's inception, it did not own, rent or occupy the Amazon Warehouse. App. 803-04 R. Doc. 52 at 21-22.

TriStar oddly argues that the clear and unambiguous "own, rent, or occupy" policy language "should be relegated to what it is: a non-exhaustive and non-binding description of the actually named locations" because in enforcing this language "the district court immediately made provisions of the Policy meaningless." Br. at 17-18. TriStar argues the "district court's interpretation … would render a significant portion of the listed scheduled locations meaningless because TriStar does not own, rent, or occupy" Locations Nos. 8, 10, 11, 12, 16, 23, 26. Br. at 17; *see Owners Ins.*

*Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. banc 2017) (noting an insured cannot create an ambiguity by reading a section in isolation). TriStar points to nothing in the record to support this contention. *See* Fed. R. App. P. 28(a)(9)(A) (requiring the appellant to provide "citations to the…parts of the record on which the appellant relies").

TriStar's argument also ignores the language of the Schedule. "You" immediately precedes "own, rent or occupy." App. 70 R. Doc. 1-2 at 33. Within the AXIS Policy, "You" refers to the Named Insured and any other organization qualifying as a Named Insured. App. 52 R. Doc. 1-2 at 15. The AXIS Policy lists over twenty entities as insureds, (App. 129 R. Doc. 1-2 at 92) and it is reasonable to infer that one of the other twenty named insured owns, rents or occupies the premises listed on the Schedule of Locations. *Mo. Emp'r Mut. Ins. Co. v. Nichols,* 149 S.W.3d 617, 625 (Mo. Ct. App. 2004) (a policy is to be read as a whole); *Dibben*, 261 S.W.3d at 556 (courts should avoid rendering provisions useless or redundant).

Moreover, TriStar contradicts its own argument that the "own, rent or occupy" language is "non-exhaustive and non-binding" when it argues in its conclusion that AXIS has a "duty to defend and indemnify TriStar for bodily injury that occurred at any of the scheduled premise locations *where TriStar has interests*." Br. at 20 (emphasis added). The record establishes that TriStar never had a property interest in the warehouse. App. 803 R. Doc. 52 at 21. TriStar admits it never owned the Amazon Warehouse located at 3077 Gateway Commerce Center Drive. *Id.* at 21-22.

The district court correctly applied the plain and unambiguous AXIS Policy as it is written. TriStar did not own, rent, or occupy the Amazon Warehouse at the inception of the AXIS Policy or on December 10, 2021 when it was destroyed. Therefore, the AXIS Policy does not provide coverage for the warehouse, and the district court's judgment in favor of AXIS should be affirmed.

### 2. The Amazon Warehouse is not listed within the schedule of locations or by endorsement.

Even assuming TriStar could prove it owned, rented or occupied the warehouse, TriStar did not prove it is a scheduled location. As proven by the affidavit of Rebecca Lipes, an AXIS underwriter, the insured itself provided the locations identified in the policy and the Amazon Warehouse address was never included. App. 753-54 R. Doc. 43-7 at 8-9; App. 758 R. Doc. 43-8 at 2. TriStar also ignores that the address of the warehouse was established several years before the AXIS Policy's inception, and the failure of the insured to even seek to include it effectively proves there was never any mutual intent that the warehouse be a covered location. App. 800-01 R. Doc. 52 at 18-19.

TriStar's argument fails because of the "vacant land" class code for Location No. 17, which the district court found dispositive. App. 918 R. Doc 65 at 16. TriStar's opening brief fails to address this significant point. The class code for Location No. 17 states: "49451 – Vacant Land." App. 117 R. Doc. 1-2 at 80. As the district court explained, "[t]here is no dispute that the Amazon Warehouse was

occupied, developed land, with a definitive street address, at the inception of the Policy." App. 918 R. Doc. 65 at 16.

On appeal, TriStar now argues that the address of the Amazon Warehouse "is clearly encompassed by this above Location No. 17." Br. at 18.[6] TriStar relies on Exhibit A, a Google map its counsel generated, to support its argument that Location No. 17 encompasses the Amazon Warehouse (Br. at 19); however, Exhibit A is inadmissible hearsay. TriStar's counsel created the map by arbitrarily placing a pin on Sand Road. App. 609 R. Doc 37-1 at 2. Therefore, it cannot assist TriStar in meeting its burden. *United States v. Bailey*, 571 F.3d 791, 802 (8th Cir. 2009) (inadmissible hearsay evidence does not create a genuine issue of material fact); *Wittenburg v. Am. Ex. Fin. Advisors, Inc.*, 464 F.3d 831, 839 (8th Cir. 2006) ("Arguments of counsel are not evidence"). Apart from Exhibit A, TriStar points to nothing in the record supporting its contention that Location No. 17 includes the warehouse.

Even if Exhibit A were not inadmissible, it does not show Location No. 17 or establish that the Amazon Warehouse is located within it. App. 609 R. Doc. 37-1 at

---

[6] In its opening brief, TriStar abandons its argument below that the Amazon Warehouse is located at or near Location No. 16. App. 598 R. Doc 36 at 9; App. 772 R. Doc. 51 at 9. By failing to argue Location No. 16 encompasses the Amazon Warehouse, TriStar has waived that argument. *Hill v. City of Pine Bluff, Ark.*, 696 F.3d 709, 712 n.2 (8th Cir. 2012) (claims not argued on appeal are deemed abandoned).

2. TriStar claims, "Number 17 can be described as an eastward expansion of Number 16." Br. at 8. However, TriStar cites nothing in the record to support the contention Location No. 17 is "an eastward expansion of Number 16" and ignores the fact that Location No. 16 is not located in Edwardsville, unlike Location No. 17. *See* Fed. R. App. P. 28(a)(9)(A) (appellant must provide "citations to the…parts of the record on which the appellant relies"). TriStar claims that the Amazon Warehouse is a scheduled location because "highway 255 is to the west, highway 270 is to the south, and W. Sand Road is to the east."[7] Br. at 19. Though this argument is unclear, TriStar apparently claims that because the streets and highways referenced in Location No. 17 are located near or close to the Amazon Warehouse, Location No. 17 thus must include the warehouse.

The modest premium paid to add Location No. 17 to the AXIS Policy shows the absurdity of TriStar's argument. Its argument would mean Location No. 17 insures not just the Amazon Warehouse, but a whole host of other warehouses and residential buildings in the area, for just $33. "An interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted, will be rejected." *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 275 (Mo. Ct. App. 2017) (internal quotation omitted).

---

[7] Notably, TriStar does not address the "E-1255" contained within Scheduled Location No. 17 or the fact that the description also mentions Highway 111 which is west (not east) of Highway 255.

Under TriStar's argument other locations on Exhibit A like the "STL4 Amazon" (a different Amazon distribution center) and the "DB Schenker Royal Chain Site" would presumably be included within Location No. 17, all for a premium of $33. App. 609 R. Doc. 37-1 at 2; *Craig*, 514 S.W.3d at 617 (insured cannot read provisions in isolation to "suggest a level of coverage greater than the policy actually provides as a whole.")

Any reasonable insured that wishes to insure a specific piece of property with a known address would provide the exact address to the insurance company. The facts establish that the address of the Amazon Warehouse, 3077 Gateway Commerce Center Dr S, existed by October 2017, and it does not appear anywhere in the policy, forcing TriStar to make several strained and legally unsustainable arguments regarding Location No. 17. App. 702-04 R. Doc. 41-7 at 2-4. TriStar's summary judgment record raises no question of fact as to whether the Amazon Warehouse is a scheduled location and the district court's judgment thus should be affirmed.

3.  **The Warehouse Claims are excluded by the Products-Completed Operations Hazard Exclusion.**

TriStar's brief concedes the underlying claims fall within Products-Completed Operations Hazard Exclusion by focusing its argument on the "transportation of property" exception to the exclusion. *Trans World Airlines, Inc.*, 58 S.W.3d at 621–22 (insured's burden to demonstrate an exception to an exclusion applies). However, TriStar's argument that the Warehouse Claims "arise out of the

transportation of property" fails as a matter of law, undisputed fact, and common sense.

The AXIS Policy's definition of Products-Completed Operations Hazard is subject to the exception that it does not include "'bodily injury'… arising out of (1) [t]he transportation of property." App. 68 R. Doc. 1-2 at 29. Missouri courts hold that the phrase "arising out of" should be afforded its plain and ordinary meaning. *Schmidt v. Util. Ins. Co.*, 182 S.W.2d 181, 183 (Mo. 1944). Missouri courts recognize "arising out of" should be understood to mean "originating from," "having its origin in," "growing out of" or "flowing from." *Id.* at 184; *Cap. Indem. Corp. v. 1405 Assoc., Inc.*, 340 F.3d 547, 550 (8th Cir. 2003). "'[A]rising out of' requires proof of a causal connection, though the standard of causation is broader than 'proximate cause.'" *Walden v. Smith*, 427 S.W.3d 269, 274 (Mo. Ct. App. 2014).

Missouri courts and this Court have both recognized that while "arising out of" language is broad, it is not unlimited and the connection between the instrumentality and the injury must have a direct and necessary relationship. In *Walden*, the Missouri Court of Appeals affirmed summary judgment in favor of the insurer where the injury did not arise out of the use of the vehicle. "The mere fact that the use of [a] vehicle precede[s] the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy." *Id.* at 277-78 (internal quotation omitted). The "vehicle must be the instrumentality causing

injury." *Id.* at 278. In *Ward v. International Indemnity*, the Missouri Court of Appeals affirmed summary judgment for the insurer because the vehicle used in a drive-by shooting was merely the situs and the firearm discharge unconnected to the vehicle's use. 897 S.W.2d 627, 629 (Mo. Ct. App. 1995) (insurer entitled to summary judgment where the injuries did not arise out of the use of a motor vehicle within the meaning of the policy). This Court reached to the same conclusion in *Patel v. LM General Ins. Co.*, 922 F.3d 875, 879 (8th Cir. 2019), finding no coverage where the drive-by shooting did not arise out of the use of the vehicle.

TriStar asserts, without any citation to the record, that the Warehouse Claims' deaths and injuries "were suffered by individuals acting within their employment as drivers of Amazon commercial vehicles who made deliveries on behalf of Amazon at a location that existed for the purpose of transporting property." Br. at 22; *Watson v. O'Neill*, 365 F.3d 609, 614–15 (8th Cir. 2004) (declining to address argument made without citation to the district court record). Courts will not consider arguments that lack proper citation to the record. *Jeseritz v. Potter*, 282 F.3d 545, 548 (8th Cir. 2002). Even if TriStar had included record citations in its opening brief, the underlying claimants' possible status as delivery drivers is unrelated to the injuries sustained when the building collapsed. *Ward*, 897 S.W.2d at 629; *Patel*, 922 F.3d at 879. Moreover, TriStar's argument would essentially allow the exception to swallow the definition whenever a premises is involved, however directly or

tangentially, in the "transportation of property." *Blair By Snider v. Perry Cnty. Mut. Ins. Co.*, 118 S.W.3d 605, 606 (Mo. banc 2003) (rejecting construction that produces an unreasonable result).

In its counterclaim against AXIS, TriStar alleged, and AXIS admitted, that the Warehouse Claims "arise out of the injuries and deaths allegedly sustained at an Amazon Warehouse…following the warehouse being struck by a tornado." App. 436 R. Doc. 25 at 14. TriStar further alleged, "injuries and/or deaths [were] caused by the destruction of a warehouse being struck by a tornado." App. 438 R. Doc. 25 at 16. The *McEwen* Complaint alleges injuries caused by "parts of the wall collapsing and other multiple structural failures." App. 23 R. Doc. 1-1 at 4; App. 213 R. Doc. 19-1 at 7. The *January* and *Hickman* Complaints also allege the collapse and other structural failures at the Amazon Warehouse led to injuries. App. 250 R. Doc. 19-2 at 10 (*January*); App. 296 R. Doc. 19-3 at 13 (*Hickman*). The Cope/Virden Claims "arise out of the December 10, 2021 tornado." App. 822 R. Doc. 53-1 at 5. The district court agreed, "the personal injuries and deaths suffered at the Amazon Warehouse on December 10, 2021, arose out of a category 3 tornado striking the Amazon Warehouse and the alleged faulty design and construction." App. 921 R. Doc. 65 at 19.

TriStar does not point to any evidence proving that the Warehouse Claims arose out of the "transportation of property" and, therefore, has failed to prove there

is a question of fact as to the application of the exception. Accordingly, the district court did not err in finding the Products-Completed Operations Hazard Exclusion applies to preclude coverage.

C.    **Both the Classification and Professional Services Exclusions preclude coverage for the Warehouse Claims.**

While two other exclusions were not addressed by the district court because it found multiple, separate independent reasons why the AXIS Policy affords no coverage for the Warehouse Claims, this Court may also affirm the judgment in AXIS's favor because the claims are precluded by the Classification Exclusion and the Professional Services Exclusion. *Warner Bros. Ent., Inc. v. X One X Prod.*, 644 F.3d 584, 591 (8th Cir. 2011) (reviewing court may affirm for any reason supported by the record). Initially, TriStar's attempt to incorporate by reference its underlying summary judgment briefing violates Eighth Circuit Rule 28A(j) which specifically prohibits the practice. Br. at 22, n. 1; 8th Cir. R. 28A(j) (party may not incorporate by reference contents of brief filed elsewhere). Accordingly, TriStar cannot rely on arguments it attempts to incorporate from its briefing in the district court, and thus has waived them.

1.    **AXIS has not waived the applicability of the Classification and Professional Services Exclusions.**

This Court disfavors waiver as a basis to preclude an insurer's policy defenses. *Cedar Hill Hardware and Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d

329, 342 (8th Cir. 2009). Waiver bars an insurer's policy defense when there has been "either (1) an express waiver by the insurer or (2) conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right." *Id.* "In the absence of one of these circumstances, an insured must rely on estoppel, which requires more than a showing that an insurer failed to raise a defense." *Id.* The insurer must have raised inconsistent defenses resulting in prejudice. *Id.*

It is fundamental that all terms, conditions, exclusions, and endorsements to an insurance policy be construed as a whole. *Nichols,* 149 S.W.3d at 625 (a policy is to be read as a whole). Accordingly, TriStar's claims are subject to all terms, conditions, exclusions, and endorsements of the AXIS Policy. App. 200 R. Doc. 19 at 9 ("the AXIS Policy was written and priced to provide coverage for otherwise covered and non-excluded bodily injury"); App. 583-84 R. Doc. 30 at 5-6 ("[T]he rights and obligations of TriStar and AXIS are governed by all terms, conditions, limitations, and exclusions" to the AXIS Policy). In its Complaint for Declaratory Judgment, AXIS denied TriStar's claim for defense and indemnity coverage for the Warehouse Claims. App. 202 R. Doc. 19 at 11 (seeking a declaration AXIS has neither a duty to defend nor indemnify TriStar for the warehouse claims). TriStar has proven no facts demonstrating any prejudice, nor has it demonstrated detrimental reliance (nor could it, since AXIS denied coverage from the inception of this litigation). *Cedar Hill Hardware*, 563 F.3d at 341–43 (insured must show insurer

raised inconsistent defenses causing prejudice to the insured in order to estop insurer from raising an unpled policy defense). AXIS has waived no provisions of the AXIS Policy or engaged in conduct "clearly and unequivocally" showing it intended to relinquish any policy defense, and this Court can address the application of both exclusions.

### 2. The Classification Exclusion limits coverage of Location No. 17 to operations related to vacant land.

The Classification Exclusion precludes coverage for "'bodily injury'…arising of any operations that are not classified or shown on the Declarations of this policy." App. 115 R. Doc. 1-2 at 78. As discussed *supra*, TriStar has abandoned its argument that Location No. 16 encompasses the Amazon Warehouse and now solely argues Location No. 17 encompasses the warehouse. *See* Sec. B.2 of Argument. Policy Change Order 1 classifies Location No. 17 as "Vacant Land – Other than Not-For-Profit." App. 117 R. Doc. 1-2 at 80. Even if Location No. 17 encompassed the Amazon Warehouse (it does not), there is no dispute that the Warehouse Claims arise not from the property's use as vacant land, but from the collapse of a large commercial building (*i.e.* fully developed property). *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008) (unambiguous policy language will be enforced as written). As the district court concluded, "it is unreasonable to construe the Amazon Warehouse as being contained within vacant land." App. 918 R. Doc. 65 at 16.

While TriStar claims AXIS relied on parol evidence, that argument is moot because TriStar has abandoned its Location No. 16 argument. As it did below, AXIS recognizes there is no way to match the premises on the Schedule of Locations to the classifications on the Declaration Page. *PlaNet Prods. v. Shank*, 119 F.3d 729, 732 (8th Cir. 1997) (parol evidence can be used to clarify an ambiguous provision). In order to make the connection between Location No. 16 and the correct classification code, AXIS presented the unrebutted affidavit of Rebecca Lipes which proved that Location No. 16 has a classification of "49451," vacant land. App. 713-718 R. Doc. 43 at 1149-1154; App. 1168-1173.[8] TriStar did not rebut the affidavit and did not offer any other admissible evidence contradicting Lipes's affidavit and supporting evidence. As the affidavit proves, it was the insured who provided the documentation showing Location No. 16 should be classified as vacant. App. 1179. TriStar cites no evidence in the record to contradict the Lipes Affidavit, and her testimony is thus established for purposes of AXIS's Motion for Summary Judgment and this appeal.

Policy Change Order 1 classifies Location No. 17 as vacant land, and, therefore, even if the Amazon Warehouse were a scheduled location, the Classification Exclusion would preclude coverage for the Warehouse Claims.

---

[8] Joint Appendix Volume III (App. 934 – 1235) contains documents accepted by the district court below but are not available on the electronic court docket for the Eastern District of Missouri.

### 3. The Professional Services Exclusion precludes claims for TriStar's negligence in building, constructing, and developing the Amazon Warehouse.

The Professional Services Exclusion precludes liability for claims alleging "bodily injury … due to the rendering or failure to render any professional services" even if the claim includes negligence in the "supervision, hiring, employment, training or monitoring" of others involved in any professional service. App. 97 R. Doc. 1-2 at 60. The Schedule includes "[a]ll Professional Services provided by the Insured." *Id*.

Under this Court's precedent, a "professional act or service" involves "specialized knowledge, labor or skill, and the labor is predominantly mental or intellectual." *Am. Econ. Inc. Co. v. Jackson*, 476 F.3d 620, 624 (8th Cir. 2007) (professional services exclusion applied where employee "drew upon training, knowledge, and experience as a nurse and administrator"); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Structural Sys. Tech., Inc.*, 756 F. Supp. 1232, 1238 (E.D. Mo. 1991) (professional services exclusion applied to preclude property damage claims arising from the insured's design, supervision, inspection, or engineering services related to a television broadcast tower).

The *McEwen* Complaint alleges TriStar "participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work" and that it had the duty to "exercise reasonable care in the building, planning, and construction of

the Amazon Warehouse." App. 228 R. Doc. 19-1 at 22. The *January* Complaint alleges TriStar "participated, orchestrated, managed, supervised, controlled, directed…the means, method and operative details of work being done." App. 261 R. Doc. 19-2 at 21. Finally, the *Hickman* Complaint alleges TriStar "built, developed, and constructed" the Amazon Warehouse. App. 305 R. Doc. 19-3 at 22. These complaints all allege TriStar (or those it supervised) failed to include certain safety features and failed to develop the warehouse in compliance with certain building codes. App. 229 R. Doc. 19-1 at 23 (*McEwen*); App. 262 R. Doc. 19-2 at 22 (*January*); App. 306 R. Doc. 19-3 at 23 (*Hickman*); *see Travelers Indem. Co. v. Figg Bridge Eng'rs, Inc.*, 389 F. Supp. 3d 1060, 1073 (S.D. Fla. June 24, 2019) (the design and construction of a bridge constitute "professional services" excluded by a professional services exclusion; insurer had no duty to defend).

These allegations demonstrate the Warehouse Claims arise out of TriStar's rendering or failure to render professional services and are thus precluded by the Designated Professional Services Exclusion.

## CONCLUSION

Because there is no potential for coverage for TriStar under the AXIS Policy for the Warehouse Claims, including currently pending claims and lawsuits as well as any that may be asserted in the future, AXIS Surplus Insurance Company

respectively requests this Court affirm the district court's grant of summary judgment in its favor.

Respectfully submitted,

**SKARZYNSKI MARICK &**
**BLACK LLP**

By: */s/ Michael M. Marick*
Michael M. Marick
Andrew J. Candela
353 N. Clark Street, Suite 3650
Chicago, IL 60654
(312) 946-4200
mmarick@skarzynski.com
acandela@skarzynski.com

*Attorneys for Plaintiff-Appellee,*
*AXIS Surplus Insurance Company*

**WATTERS WOLF BUB HANSMANN**

By: */s/ Russell F. Watters*
Russell F. Watters
600 Kellwood Parkway, Suite #120
St. Louis, MO 63017
(636) 798-0570
rwatters@wwbhlaw.com

*Attorneys for Plaintiff-Appellee,*
*AXIS Surplus Insurance Company*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i) in that it contains 7,463 words.

2. This brief complies with Federal Rules of Appellate Procedure 32(a)(4) - 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point font size Times New Roman.

3. Per Local Rule28A(h), undersigned counsel has scanned for viruses and confirms the brief is virus-free.

**SKARZYNSKI MARICK & BLACK LLP**

By: */s/ Michael M. Marick*
Michael M. Marick
Andrew J. Candela
353 N. Clark Street, Suite 3650
Chicago, IL 60654
(312) 946-4200
mmarick@skarzynski.com
acandela@skarzynski.com

*Attorneys for Plaintiff-Appellee,*
*AXIS Surplus Insurance Company*

**WATTERS WOLF BUB HANSMANN**

By: */s/ Russell F. Watters*
Russell F. Watters
600 Kellwood Parkway, Suite #120
St. Louis, MO 63017
(636) 798-0570
rwatters@wwbhlaw.com

*Attorneys for Plaintiff-Appellee,*
*AXIS Surplus Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on all parties registered with the Court's e-filing system as attorneys of record on this 20th day of June, 2023.

*/s/ Angela Ranniger*